A. HIRSCHMAN COMPANY v. JACOB KIEWEL.

April 18, 1900.

Nos. 11,985—(48).

**Action for Price—Charge to Jury—Evidence.**

In an action for goods sold, *held*, (1) that the trial court did not err in instructing the jury, in effect, that evidence of the correspondence and acts of the parties after the alleged sale of the goods could only be con-

sidered for the purpose of determining what the original contract was; (2) that the verdict is sustained by the evidence.

Action in the district court for Morrison county to recover a balance alleged to be due for goods sold. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Lindbergh & Blanchard* and *Charles Bechhoefer*, for appellant.

*Frank W. Lyon*, for respondent.

START, C. J.

Action for goods sold. The complaint alleged that at St. Paul, on January 31, 1898, the plaintiff, at the request of the defendant, sold to him goods of the agreed value of $942.50, no part of which had been paid, except the sum of $501.87. The answer was a general denial. Verdict for the defendant, and the plaintiff appealed from an order denying its motion for a new trial.

The record presents two questions for our decision. One is whether the verdict is sustained by the evidence; the other, whether the trial court erred in its charge to the jury as to certain documentary evidence.

On the trial the plaintiff's president testified that he sold the goods to the defendant at St. Paul, stating the time. This the defendant denied, and he and another witness, Rudolph Blum, testified that the goods were sold at St. Paul at the time stated, not to the defendant, but to Blum. The evidence shows that the defendant was a brewer, having his place of business at Little Falls, and that Blum was about to start a saloon at Sauk Center, and that the defendant was to buy the fixtures for the saloon and furnish money for the license. The goods, consisting of a stock of liquors, were billed to the defendant, and shipped in his name, to him to Sauk Center, by the plaintiff, without the previous knowledge of the defendant. The station agent, after the arrival of the goods, and on February 7, 1898, caused to be sent or presented to the defendant a written notice in these words: "We have some goods here billed to Jacob Kiewel. Notify Rudolph Blum. Please wire order from

Kiewel to deliver to Blum." The defendant signed an order on the back of the notice, which was in these words: "Mistake in billing. Turn goods over to Blum." The goods were accordingly turned over to Blum. Certain letters from the defendant with reference to the goods were also introduced. One of them, dated February 3, was to the effect that the shipping of the goods in the defendant's name was a mistake,

"As I do not want my name made known. The license is in his name, and the goods ought to have been shipped the same. Please telegraph to the agent at Sauk Center at once, and have the goods turned over to Blum, and say it was a mistake in billing."

It does not appear that the plaintiff took any action with reference to this request, but the defendant testified that the president of the plaintiff called on him on February 7, and told him that the shipping of the goods in his name was a mistake. The witness Blum also testified to a similar admission at another time. On February 9, the defendant wrote to the plaintiff to the effect that the goods were shipped in his name by mistake; that they were to be shipped to Blum, and remain the property of the plaintiff until they were sold.

"I do not accept the goods as charged to me, and have told Blum not to start until it is straightened out."

The president of the plaintiff wrote in reply to the effect that the contents of the defendant's letter were a surprise to him, as his understanding was that the matter had been settled to the satisfaction of all parties; that no business man would furnish Mr. Blum goods on his own credit without a guaranty from the real owner of the business.

"As you are the real owner of the place, and control the business, we naturally expect some guaranty from you. This [is] fair and square, and we are not trying to burden you with any more responsibility than you should carry. In case the venture should not prove to be a success, * * * we are to take back whatever remains unsold of our goods at invoice price, and we shall certainly live up to it."

There was other evidence, both oral and documentary, bearing

more or less directly upon the question .whether or not the goods were in fact sold to the defendant or to Blum. The plaintiff excepted to the following instruction:

"There is a good deal of testimony as to what occurred after the making of this agreement in St. Paul, but that is only corroborative of what took place between the parties in St. Paul. It is not claimed that any new agreement was entered into afterwards, but they claim the agreement was made there, and all these letters and statements, and everything that has been introduced in evidence, is to show what that bargain in St. Paul was, and you will not consider it for any other purpose."

The plaintiff claims that the defendant, by his order to the station agent to deliver the goods to Blum, thereby accepted them as his own, whether he had previously purchased them or not; hence the evidence is conclusive that the verdict should have been for the plaintiff, and not for the defendant.

But, if mistaken in this, it is further claimed that it was a question for the jury to determine, from the letters and conduct of the parties after the goods were shipped, whether there was a sale of the goods to the defendant independently of what took place at St. Paul; hence the court erred in giving the instruction. It is true, as the plaintiff claims, that if goods are shipped to and received by a party, though not ordered by him, he will in law be regarded as a purchaser thereof, if he exercises acts of ownership over them which are inconsistent with the ownership of another. But such is not this case; for it is apparent, from the correspondence of the parties and upon the face of the order to the station agent to deliver the goods to Blum, that the order was not made as an act of ownership of the goods inconsistent with the rights of the actual owner, but for the purpose of correcting what the defendant understood to be a mistake. He did not, as a matter of law, make the goods his own by his acts after the goods were shipped. The evidence, oral and documentary, as to what occurred after the goods were shipped, was competent for the purpose of corroborating the plaintiff's claim that defendant purchased the goods at St. Paul before they were shipped. It would not justify a finding that the defendant purchased the goods after they were shipped. Therefore the court did not err in giving the instruction excepted to.

Whether the defendant purchased the goods was, under the evidence, a question of fact for the jury, and the verdict in favor of the defendant on this issue is reasonably sustained by the evidence.

Order affirmed.